Ruffin, C. J.
 

 Neither of the Statutes respecting insolvents, exempts a horse
 
 nominatim
 
 from execution, and it is only in that of 1844, ch. 32, that hogs are mentioned.
 
 *22
 
 The case, therefore, turns on that Act, and the general words of that of 1848, ch. 3S. The Act of 1844,. ‘-in favor of poor debtors,” authorises three freeholders, appointed by a Justice of the Peace, to lay off and assign to a debtor, who is a house-keeper, in addition to the property then exempt from execution, certain other articles, namely : the necessary farming tools for one laborer; one bed, bedstead and covering, for every two members of the family; two months provisions lor the family ; four hogs, and all necessary household and kitchen furniture, not to exceed $>50 in value ; and directs them to make report thereof to the next County Court. The property thus assigned, is exempt from execution for debts contracted after the 1st day of July, 1845. The subsequent Act of 1848 is entitled “ An Act to amend' and consolidate the several Acts heretofore passed, in favor of poor debtorsand, after exempting from execution, in the first section, a number of specified articles, it enacts, in the second and third sections, in favor of every house-keeper, complying with the Act, that, in addition to those articles, “ there shall hereafter be exempt the following property, and none other, to wit: one cow and calf, ten barrels of corn or wheat, 50 lbs. of Bacon, Beef, or Pork, or one barrel of fish ; all necessary farming tools for one laborer, one bed, bedstead and covering for every two members of the family, and such other property as three freeholders appointed, &.C., may deem necessary for the comfort and support ot such debtor’s family: such other property not to exceed in value $50;” and that the freeholders shall immediately make out a full and fair list thereof, and return it to the Clerk of the County Court, to be filed among the records.
 

 It will be observed, that, while the Act of 1844, in addition to the specified articles, allowed furniture to the value .of $50, to be laid off to the debtor, that of 184S, which
 
 *23
 
 professes to embrace the whole subject, and thereafter, to supersede all the previous Acts, suffers any 11 other property” to be thus laid off to the debtor, provided, only, that it exceed not in value the sum mentioned. Subject to that-proviso, it was, then, competent for the freeholders to assign the mare and hogs to the debtor; and, although the provisions, for carrying out the purposes of the Ac-t, seem to be very imperfect, and leave a door open for much abuse, it is the duty of the Court to execute those provisions, as far as they are capable of execution. As the tenor of the proceedings oí the magistrate and freeholders is not set forth, nor any question made in respect of the value put oti those articles, or in respect of their actual value, nor respecting the return thereof, or notice to the defendants, it is to be assumed that in those, and all other points, the allotment was admitted to be in conformity to the Act, and sufficient, save, only, in the two, on which objections were taken at the trial. Upon these two, the opinion of the Court is opposed to that of the presiding Judge.
 

 Although the bond, on which the judgment was rendered, was given for money due on dealings which occurred before July, 1845, yet it was executed after that day, and, to the purposes of the Acts, created a debt at that time. It is, ordinarily, the legal operation of a bond to create a debt
 
 joroprio vigore;
 
 and it is declared as having that effect, without reference to other considerations. That must be especially true in reference to this question, for thé date of the bond is the guide to the officer, as to his duty in this respect, and it could not have been meant, that a point of so much importance to the poor debtor, should depend on the state of accounts between him and the plaintiff, at remote periods, before their settlement, which the
 
 officer
 
 would have no means of investigating and deciding pro-, perly. As far as we see, the bond was the only security
 
 *24
 
 for the debt; and, in a legal sense, the debt arose by force of the bond.
 

 The Court holds also, that the allotment of 1849, was not affected by that made in the preceding year, under the act of 1844. It is not stated at what period in 1849, the transactions took place. But it is. to be assumed to have been after the act of 1848. was in force, and indeed, the word ‘'hereafter,” put the act into operation in November, 1848;
 
 Weeks
 
 v
 
 Weeks, 5
 
 Ire. Eq., 111. Its provisions could not be affected by those of the act of 1844, which it professes to supersede, and indeed, expressly repeals in the concluding section. But the Court is of opinion, that the result would be the same, if the two acts were compatible, and subsisting together, or if both allotments had been made under the act of 1848. The great purpose of these statutes is to prevent a housekeeper and his family from being deprived of the immediate means of subsistence, by exempting from execution such things as the legislature deemed requisite to the supply of the pressing wants of food and clothing, and such bedding as would enable them to subsist together. To effect that end, the specified allowances must at all times be protected, or rather the debtor must have it in his power to get them protected, and as most of them are necessarily consumed in the intended use of them, it follows, that when the.articles, once allotted, are consumed in whole or in part, Others of the like kind are to be exempted. But, in order to exempt them, it is necessary they should be specifically laid off and reported by the freeholders. For, the second and third sections of the act do not merely exempt certain quantities of particular kinds of articles, but on the contrary, authorise articles uncertain, both in quantity and kind, to be laid off Hence, all the articles must be designated specifically in the report. Indeed, without such a designa tiop, the officer would be continually involved in difficulties
 
 *25
 
 as to what was, or was not, liable to the execution. Such being the object, and nature oí the proceedings, it is manifest, that whenever an execution may come, the debtor is then to have the right to his portion. If there be no change in his effects since they were assigned, there will be no necessity for a new allotment, though a second for the same things, can do no harm. But if the there be such change in his effects, or family, another allotment is indispensable to the purposes of the act. It is equally plain that each and every allotment must be in itself complete, in designating all the articles allowed; since, if it were not so, successive allowances might enable the debtor to accumulate a fund beyond the bounty intended in the act, and the officer would be embarrassed as to the identity and value of the things mentioned in the different allotments, and those remaining specifically. The conclusion, therefore, is, that the second allotment in this case was proper, and may have been indispensable to give the debtor the full benefit of the act, and supposing the allotment not to have been in itself otherwise defective, the plaintiff is necessarily entitled to this action.
 

 Per Curiam. Judgment reversed, and
 
 venire de novo.